O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California 90071
Tel. (213) 430-6000
Stephen H. Warren
Tancred Schiavoni
Brian M. Metcalf
Austin K. Barron

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

| | | |
|---|---|---|
| In re : | : | Chapter 11 |
| | : | |
| ENRON CORP., ET AL., | : | Case No. 01-16034 (AJG) : |
| | : | |
| | : | Jointly Administered |
| Debtors. | : | |

---------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 Case No. |
| | : | |
| ENRON WIND CORP., : | : | Case No. 02-10743 (AJG) |
| | : | |
| Debtor. | : | |

---------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 Case No. |
| | : | |
| ENRON WIND SYSTEMS, INC., : | : | Case No. 02-10747 (AJG) |
| | : | |
| Debtor. | : | |

---------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 Case No. |
| | : | |
| ENRON WIND ENERGY SYSTEMS CORP., : | : | Case No. 02-10748 (AJG) |
| | : | |
| Debtor. | : | |

---------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 Case No. |
| | : | |
| ENRON WIND MAINTENANCE CORP., : | : | Case No. 02-10751 (AJG) |

|  |  |  |
|---|---|---|
| Debtor. | : | |
| ---------------------------------------------------------------- x | : | |
| In re | : | Chapter 11 Case No. |
| ENRON WIND CONSTRUCTORS CORP., : | : | Case No. 02-10755 (AJG) |
| Debtor. | : | |
| ---------------------------------------------------------------- x | : | |
| In re | : | Chapter 11 Case No. |
| EREC SUBSIDIARIES I, LLC, : | : | Case No. 02-10757 (AJG) |
| Debtor. | : | |
| ---------------------------------------------------------------- x | : | |
| In re | : | Chapter 11 Case No. |
| EREC SUBSIDIARIES II, LLC, : | : | Case No. 02-10760 (AJG) |
| Debtor. | : | |
| ---------------------------------------------------------------- x | : | |
| In re | : | Chapter 11 Case No. |
| EREC SUBSIDIARIES III, LLC, : | : | Case No. 02-10761 (AJG) |
| Debtor. | : | |
| ---------------------------------------------------------------- x | : | |
| In re | : | Chapter 11 Case No. |
| EREC SUBSIDIARIES IV, LLC, : | : | Case No. 02-10764 (AJG) |
| Debtor. | : | |
| ---------------------------------------------------------------- x | : | |
| In re | : | Chapter 11 Case No. |
| EREC SUBSIDIARIES V, LLC, : | : | Case No. 02-10766 (AJG) |

**Debtor.**                                                                 :
--------------------------------------------------------------- x

# OPPOSITION OF MISSION IOWA WIND COMPANY TO DEBTORS' MOTIONS PURSUANT TO SECTION 105(a) DIRECTING THAT CERTAIN ORDERS IN THE CHAPTER 11 CASES OF ENRON CORP. ET AL. BE MADE APPLICABLE TO ENRON WIND DEBTORS

1. Mission Iowa Wind Company ("Mission") hereby submits its opposition to the motions (the "Motions") of each of (i) Enron Wind Corp., (ii) Enron Wind Systems, Inc., (iii) Enron Wind Energy Systems Corp., (iv) Enron Wind Maintenance Corp., (v) Enron Wind Constructors Corp., (vi) EREC Subsidiary I, LLC, (vii) EREC Subsidiary II, LLC, (viii) EREC Subsidiary III, LLC, (ix) EREC Subsidiary IV, LLC, and (x) EREC Subsidiary V, LLC, as debtors and debtors in possession (collectively, the "Enron Wind Debtors," individually each an Enron Wind Debtor" and together with the Enron Debtors, the "Debtors") for Joint Administration of the [Enron Wind] Debtors pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure and for an Order Pursuant to Section 105(a) of the Bankruptcy Code Directing that Certain Orders in the Chapter 11 Cases of Enron Corp., et al., Be Made Applicable to Each Enron Wind Debtor. Ostensibly, the Motions essentially seek interrelated relief – to merge the Enron Wind Debtors into Enron Corporation's ("Enron Parent") ongoing bankruptcy cases, first by jointly administering the cases and second by making all orders previously entered in Enron Parent's bankruptcy case (as well as all future orders) applicable to the Enron Wind Debtors.

2. Mission[1] is particularly concerned that the Motions may be used by Enron Parent and its affiliates to access the assets and value of the Enron Wind Debtors, which are substantially solvent, at the expense of the creditors of the Enron Wind Debtors. For example,

---

[1] Mission is the ninety-nine percent owner of a wind power project (Storm Lake) managed by one or more of the Enron Wind Debtors or their affiliates. In addition to its ownership rights, Mission is the beneficiary of direct obligations owed to it by various of the Enron Wind Debtors.

LA3:999068.4

Enron Parent and its affiliates seek to make the Enron Wind Debtors guarantor-obligors on a previously negotiated DIP facility, and also to make the Enron Wind Debtors subject to a laundry list of orders that could substantially and detrimentally affect the recoveries of the creditors of the Enron Wind Debtors. At the time the Motions are heard, the creditors of the Enron Wind Debtors will have had less than forty eight hours to review and respond to the relief sought,[2] and no record has been made that could justify such a result – even on an interim basis. Neither Mr. Umanoff's affidavit nor either of the Motions support any of the factual findings that would necessarily arise if any of the orders previously entered in Enron Parent's bankruptcy case were made applicable. Similarly, no protections have even been suggested to assure that the creditors of these substantially solvent debtors will retain their recovery rights.

3. In its own filings, the Enron Wind Debtors admit that they have no secured debt. (Affidavit of Mr. Umanoff at ¶ 6.) They also submit statements showing that various of the Enron Wind Debtors are solvent. (Id. at ¶ 7.) Indeed, shortly prior to the filing, the Enron Wind Debtors presented financial statements to Mission showing that they had substantial cash assets ($5.3 million in unrestricted cash plus $7.9 million in restricted cash) and were solvent by the amount of over $217,000,000. (Copies of these financial statements will be available from counsel for Mission during the hearing.) Similarly, only two months ago, the Enron Wind Debtors represented to Mission that they were completely independent of the Enron Parent and its related debtors, had a strong balance sheet and were having a "very profitable year." See Letter dated December 3, 2001 from Adam S. Umanoff, attached hereto as Exhibit A.

4. In light of that completely separate nature and their strong financial position, the Enron Wind Debtors were not part of the original filing. By their admission on the petition date, the Enron Wind Debtors filed to effectuate a sale to General Electric Company. See Letter

---

[2] To the best of Mission's knowledge, it was not served with the Motion, even though it has significant claims against the Enron Wind Debtors. Thus, it has had virtually no time to prepare this response.

from Adam S. Umanoff, President and CEO of the Enron Wind Debtors, dated February 20, 2002, attached hereto as Exhibit B. The Enron Wind Debtors represented that one purpose of the filing and sale was to "mitigat[e] the uncertainties associated with the recent Enron [Parent] situation." (See id.)

5. Mission is concerned about the inequities that could result from granting the Motions. For example, the Interim DIP Lending Order could make the Enron Wind Debtors absolute and unlimited guarantors of borrowings made by <u>Enron Parent</u>, while the Enron Wind Debtors would not directly benefit from such obligations. Indeed, because the Enron Wind Debtors are attempting to sell their assets to General Electric, it is highly unlikely that they would benefit even indirectly from bolstering Enron Parent's creditworthiness.

6. Outside of bankruptcy, then, it is likely that such a transaction would be a fraudulent conveyance, and the creditors of the Enron Wind Debtors would be able to void such a transaction. However, in this case, the Interim DIP Lending Order arguably attempts to make the interim obligations thereunder unassailable.[3] Thus, Mission is concerned that if the Motions are granted, Enron Parent and the Enron Wind Debtors will assert that their assets and liabilities have effectively become scrambled and that it is impossible to extricate the Enron Wind Debtors and the claims of their creditors from the larger Enron bankruptcy.[4]

7. It would also appear that in the present cases there is every reason to leave the bankruptcy proceedings of the Enron Wind Debtors separate and apart from those of Enron Parent. The bankruptcy of Enron Parent and the administration thereof involves chaos and

---

[3] The Interim DIP Lending Order specifically states at ¶ 9(c) that "[i]f any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacation shall not affect (i) the validity of any obligation, indebtedness or liability incurred by the Debtors to the DIP Lenders prior to written ... or (ii) the validity or enforceability of any lien or priority authorized or created hereby pursuant to the DIP Credit Agreement...."

[4] On a related note, the Interim DIP Lending Order provides that it shall apply automatically and without further order of the court to <u>any</u> debtor consolidated into the bankruptcy of Enron Parent. (Ex. A at ¶ 13.) Thus, merely granting the joint consolidation order could indirectly and inadvertently intertwine the fates of the Enron Wind Debtors with Enron Parent.

confusion, and may continue for many years. The bankruptcy of the Enron Wind Debtors, on the other hand, should involve relatively little administration, if kept isolated from Enron Parent's case. The Enron Wind Debtors are substantially solvent entities that are filing to effectuate a sale of assets. Presumably this sale will either be approved or rejected in the initial stages of the case, and the remainder of the case can be administered efficiently and equitably.

8. As an equity holder Enron Parent should only be able to realize that value either by selling its equity interest or by realizing the value of its equity after liquidation and satisfaction in full of all creditor claims. If, indeed, Enron Parent's equity interest in the Enron Wind Debtors has value, then the liquidation or other administration of the Enron Wind Entities through separate proceedings will in fact allow Enron Parent to realize that value more quickly. If, on the other hand, Enron Parent's equity interest does not have value, then the Motions are easily seen as an improper attempt to supercede the valid claims of the Enron Wind Debtors' creditors. Simply put, the Motions leave too many questions unanswered. For example, if the Motions are approved, will Enron Parent or its affiliates attempt to use the proceeds of the sale of the Enron Wind Debtors to satisfy their own, previously negotiated DIP loan? Or, will the proceeds be used appropriately to pay the creditors of the Enron Wind Debtors? At the very least, these difficult issues should not be decided on less than forty-eight hours notice, but only after all interested parties have had a full and fair opportunity to perform any necessary discovery and to fully and properly brief the legal issues involved.

Dated: February 7/, 2002

Attorneys for Mission Iowa Wind Company
O'MELVENY & MYERS LLP
Citigroup Center
153 East 53rd St., 54th Floor
New York, NY 10022-4611
Tel: (212) 326-2000
Fax: (212) 326-2601

_____
Tancred Schiavoni

LA3:999068.4

# Exhibit A



**Enron Wind**
13000 Jameson Road
Tehachapi, CA 93561
Tel. (661) 823-6700
Fax (661) 822-7880
www.enronwind.com

February 20, 2002

RE: Sale of Enron Wind to General Electric

Dear Friends of Enron Wind:

I am writing to inform you of some very important news. Today, February 20, 2002, Enron Wind and several of its subsidiaries, along with Enron Corp., entered into a Purchase and Sale Agreement with General Electric for the sale of substantially all of the assets of Enron Wind (the "GE Purchase Agreement"). We want you to know that we view this transaction as an extremely positive step for our company. It not only assists in mitigating the uncertainties associated with the recent Enron Corp. situation, but also demonstrates GE's confidence through its commitment to invest in our company and the wind power industry.

A condition of the GE Purchase Agreement is the requirement that Enron Wind and certain of its U.S affiliated entities file for reorganization under Chapter 11 of the U.S. Bankruptcy Code. Today, in accordance with this requirement, these various Enron Wind entities filed for protection with the Bankruptcy Court for the Southern District of New York. This filing was expressly required under the GE Purchase Agreement to administer the sale of Enron Wind's U.S. assets. No such bankruptcy filing has been made for any of Enron Wind's European companies.

The GE Purchase Agreement will require approval by the Bankruptcy court, and we expect the transaction to be completed during second quarter. At that time, the majority of Enron Wind's workforce will transition to the new GE wind entity. In the meantime, prior to the transaction's close, we intend to continue to operate our businesses in the ordinary course.

We want you to know that we have valued your friendship and our business relationship through the years and look forward to working together with you in the future as we begin business within our new corporate identity.

Very truly yours,

Adam S. Umanoff
President and CEO

# Exhibit B



**Enron Wind**
1XXX Jameson Road
Tehachapi, CA 93561
Tel. (661) 823-6700
Fax (661) 822-7880
www.wind.enron.com

December 3, 2001

Dear Mr. McDaniel.

In light of the recent headlines concerning Enron Corp., I am writing to update you on the current status of Enron Wind Corp. and our subsidiaries. We are clearly disappointed with the recent events surrounding Enron Corp. I want to assure you, however, that we are confident that these events will not significantly hurt our business or adversely affect our ability to satisfy our obligations to you. Here are some facts of which you should be aware:

1. *Enron Corp's Bankruptcy Filing Does Not Include Enron Wind Corp and its Subsidiaries.* Enron Wind and its subsidiary companies, including Enron Wind GmbH, are **not included in Enron Corp.'s bankruptcy filing** Enron Wind does not intend to separately seek protection under U.S., German or any other bankruptcy laws. Rather, Enron Wind and its subsidiary companies will continue to operate their businesses in the ordinary course.
2. *Enron Wind is Independent.* As you may know, while Enron Wind is a subsidiary of Enron Corp., we operate our business separate and independent from Enron Corp. Enron Wind and its subsidiaries are all independent legal entities
3. *Enron Wind is Financially Strong.* 2001 is proving to be a very profitable year for Enron Wind. We have a strong balance sheet. With strong wind power projections for 2002 and with our widely respected technology, we anticipate that 2002 will be an equally strong year. Most importantly, and notwithstanding any rumors you may have heard to the contrary, we have the ability to meet, and intend to meet, all of our business obligations.

We anticipate no changes to our manufacturing and turbine installation schedules for the remainder of this year. Our global operations remain on track to complete all of our planned business for the year and we look forward to a robust 2002. My message to you is that, notwithstanding Enron Corp.'s bankruptcy filing, we are doing everything possible to maintain "business as usual" at Enron Wind.

I hope this letter addresses any concerns you may have and I look forward to our continued and mutually beneficial business relationship. I also appreciate your support and patience as we all work through the issues surrounding Enron Corp.

Of course, we will keep you informed of any new developments In the meantime, if you have questions or concerns, please call me, Herbert Peels (our General Manager for European Operations – 49-5971-980-1001) or Bob Gates (our Americas Senior Vice President – 661-823-6730).

Very truly yours,

Adam S. Umanoff
President and CEO

Endless Possibilities.™